IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
NEWNAN DIVISION

| | |
|---|---|
| JAMES TEATE,<br><br>　　Plaintiff,<br><br>v.<br><br>TANNER MEDICAL CENTER, INC.,<br><br>　　Defendant. | Civil Action No.: |

## COMPLAINT FOR DAMAGES

COMES NOW Plaintiff James Teate and files his complaint against Defendant Tanner Medical Center, Inc. ("Tanner"), by showing this Court the following:

## INTRODUCTION

**1.** Plaintiff Teate (age 75, African American) was a high-performing medical technologist for Tanner at the Tanner Medical Center in Carrolton, Georgia for over eighteen (18) years. In 2021, new management took over Tanner and began to show favoritism to younger, Caucasian employees at the expense of older, African American employees. Teate was repeatedly subjected to negative comments about his age and age-related erroneous comments about his eyesight. Teate was also singled out and reprimanded for not following Tanner procedures despite Caucasian employees receiving no discipline for their likely-fatal or illegal misconduct.

-1-

Teate was disciplined and ultimately fired for an incident in February 2023 involving a new blood bank bagging procedure on which Teate had not been trained. A younger (age 40), Caucasian technician (as well as others) who engaged in the same conduct as Teate regarding the blood bank bagging procedure was not fired or even disciplined.

After this February blood bank bagging incident and discipline, Teate complained about being discriminated against to two Tanner supervisors and a third Tanner employee, and further submitted a complaint letter in early March 2023 to an outside agency. Tanner management became aware of these complaints. On March 13, 2023, Teate was terminated, purportedly for the February blood bank bagging incident, for which he'd already been (discriminatorily) disciplined.

This age discrimination and retaliation action is brought pursuant to the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 et seq., and 42 U.S.C. § 1981.

## THE PARTIES

**2.** Plaintiff Teate is a former eighteen (18) year employee of Tanner, who always received excellent evaluations during his employment. He is a citizen of the State of Georgia and resides at 4039 Water Hole Court, Douglasville, Georgia 30135.

3. Defendant Tanner is a 181-bed, flagship hospital of a five-hospital health system conglomerate that provides healthcare in west Georgia. It is located at 705 Dixie Street, Carrollton, Georgia 30117. Tanner may be served by its registered agent, Carol Crews, at 705 Dixie Street, Carrollton, Georgia 30117.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over the present action under Article III, § 2 of the United States Constitution and 28 U.S.C. § 1331 because this case arises under the ADEA and 42 U.S.C. § 1981.

5. This Court has personal jurisdiction over Defendant Tanner because Tanner is located in this judicial district and transacts significant business in this judicial district.

6. Venue is proper in this Court under 28 U.S.C. § 1391 because Defendant Tanner is located in this judicial district and the events giving rise to the claims herein arose in this judicial district.

7. Teate has timely filed a charge of ADEA discrimination with the Equal Employment Opportunity Commission, Charge No. 410-2023-05785. This is filed less than 90 days since the EEOC issued a Notice of Right to Sue. This complaint is properly brought pursuant to 29 U.S.C. § 621 et seq. As an alternative claim, Mr. Teate submits that the discriminatory actions taken against him were motivated by

his race (African American) and this alternative claim is brought pursuant to 42 U.S.C. § 1981.

## FACTS

8.     Teate was hired as a full-time medical technologist in the laboratory department at Tanner, located at 705 Dixie Street, Carrolton, Georgia 30117, in March of 2005.

9.     From 2005-2021, Teate continually received excellent evaluations from his superiors. Teate was promoted to a supervisory position based in part upon his good performance, and received consistent raises. Teate never received any warning, discipline, or reprimand about the quality of his work.

10.    Sometime in 2021, Becky Campbell (Caucasian, age 40s) was promoted to the Director of the Laboratory Department and Holly Walker (Caucasian, age 30s) was hired as the Operations Manager for the Laboratory Department. Both took over as supervisors in charge of Teate's department.

11.    Once Campbell and Walker took over, things changed for Teate, who was the oldest medical technologist and one of only two African Americans in the laboratory department. For the first time in his eighteen-year career with Tanner, Teate began to receive criticism either for minor procedural issues (which were common among all techs) or for conduct that did not occur. Other younger,

Caucasian medical technologists were not subjected to this level of scrutiny and/or false criticism.

12. For example, in one instance in 2022, Teate received a written reprimand for failing to properly report a blood culture to another department. But Teate did in fact properly report the blood culture. Upon receipt of the written reprimand, Teate contacted the department, who confirmed that Teate did properly report the blood culture. Tanner's electronic system logged Teate's call and identified the recipient, thereby proving that Teate called and reported the blood culture. Campbell and Walker never rescinded or otherwise acknowledged that they wrongly issued the reprimand, despite being told by Teate and another employee, Kayla Morgan, of the proof that Teate had not made any mistake.

13. Campbell and Walker also repeatedly in 2022 and 2023 made hurtful, derogatory, and dismissive comments about Teate's age. For example, Campbell repeatedly asked Teate's coworker, Kayla Morgan, if she was overworked because Teate was old, therefore insinuating that Teate was unable to perform as shift supervisor because of his age. Campbell and Walker also repeatedly asked Teate and his coworkers for suggestions to improve Teate's shift, and then would immediately ask Teate whether and when he would retire, thereby implying that Teate leaving the laboratory department due to his age would somehow improve the department.

**14.** In late 2022, Campbell and Walker incorrectly accused Teate of being unable to conduct a medical survey and read the according numbers due to some alleged lack of adequate eyesight. They then asked Teate whether they could find a new role that was "more manageable for [him]" based upon this supposed eyesight issue. However, Teate had passed the annual eye exams mandated by Tanner and was fully capable of conducting the survey and did in fact read and record all numbers accurately. Nevertheless, Campbell and Walker spread rumors about Teate's "poor" eyesight.

**15**. Another example occurred in February 2023, when Teate received an oral reprimand for purportedly failing to follow a new blood bank bagging procedure, a new procedure on which Teate had not been trained. In February 2023, Tanner changed the type of box it used to store bagged blood. Because he had not been trained in the new procedure, Teate followed Tanner's original blood bagging procedure and used the original storage box (which was safe and acceptable). The use of the original box over the new box did not compromise the blood in any way, which remained at the proper, usable temperature at all times. Other younger techs (including Kayla Morgan) made this same mistake but were not disciplined. In fact, Morgan, who is also Caucasian, made the same mistake at the same time as Teate. Although management was aware of Morgan's mistake, she was neither disciplined nor fired.

16. After this incident, from approximately February 27 to March 9, Teate made multiple verbal complaints of discrimination to two of Tanner's managers and another (third) of Tanner's employees. In early March of 2023, Teate submitted a written complaint of age and race discrimination to an outside agency involved in providing accreditation to Tanner. Teate had a good faith belief that Tanner was engaged in unlawful employment practices, and his conduct opposed those discriminatory practices. Teate's belief was reasonable given the documented improperly issued reprimands, because other younger techs were treated more favorably, and because of the age-related comments made by the younger supervisors.

17. Tanner learned of one or more of these complaints.

18. On March 13, 2023, Teate was terminated by Campbell and Walker, purportedly because of the February blood bagging incident for which Teate had already been (discriminatorily) disciplined.

19. Teate was one of two African Americans in the laboratory department. Teate and the other African American, Michael Washington, were consistently subjected to a disparate, higher level of scrutiny by Campbell and Walker than other Caucasian employees.

20. Campbell's and Walker's treatment of Teate was materially different from their treatment of younger, Caucasian employees. For example, sometime in

2022, one younger Caucasian employee named Anna (age 40s), incorrectly reported the results of a patient's heart test results because she used a different patient's blood for the test, causing the patient to be discharged. If not for another employee verifying the report by happenstance and discovering the actual test results, and further readmitting the patient back to Tanner, that patient would have experienced catastrophic injuries, potentially including death. The incorrectly-reporting employee was not reprimanded, let alone terminated, for this likely-fatal mistake. This level of misconduct was significantly greater than any alleged against Teate.

21.  Another younger Caucasian employee, Daniel (age 20s), repeatedly violated the Health Insurance Portability and Accountability Act ("HIPAA") and other privacy laws when he repeatedly accessed Tanner patients' medical records and Tanner employees' employee files. Despite violating state and federal laws, a significantly more serious act of misconduct than Teate's conduct in February 2023, Daniel was not reprimanded or terminated for this conduct.

## COUNT ONE: AGE DISCRIMINATION

22.  Teate incorporates herein by reference the allegations set forth in the preceding paragraphs of his complaint as if fully set forth herein.

23.  At all times relevant herein, Tanner has been an "employer" within the meaning of the ADEA. 29 U.S.C. § 630(f).

24. At all times relevant herein, Teate was an "employee" of Tanner within the meaning of the ADEA. 29 U.S.C. § 630(f).

25. Teate was entitled to ADEA protections because he was over the age of forty at all relevant times. 29 U.S.C. § 631.

26. Tanner discriminated against Teate on the basis of his age. Examples of this include Tanner's derogatory comments about his age, physical attributes, and ability to perform his job functions, Tanner's refusal to provide Teate with required procedure training, and Tanner's zealous issuance of reprimands to Teate for minor, insignificant violations.

27. Tanner discriminated against Teate by terminating him because of his age. Tanner repeatedly asked Teate when he would retire and then ultimately terminated him when he would not.

28. Teate has been prejudiced by the ADEA violations. He has suffered a harm remediable by either damages or equitable relief. Specifically, Teate was damaged through loss of wages, salary, employment benefits, and other compensation denied to him by reason of the violation.

29. Teate has suffered and continues to suffer damages as a direct and proximate result of Tanner's age-based discrimination.

30. Teate is entitled to recover from Tanner for at least the wages and employment benefits he has lost as a result of Tanner's unlawful conduct in violation of the ADEA, and interest thereon, calculated at the prevailing rate.

31. Teate is entitled to recover liquidated damages from Tanner in addition to the compensation alleged above in accordance with 29 U.S.C. § 626(b).

32. Teate is entitled to front pay.

## COUNT TWO: RETALIATION

33. Teate incorporates herein by reference the allegations set forth in the preceding paragraphs of his complaint as if fully set forth herein.

34. At all times relevant herein, Tanner has been an "employer" within the meaning of the ADEA. 29 U.S.C. § 630(f).

35. At all times relevant herein, Teate was protected "employee" of Tanner within the meaning of the ADEA. 29 U.S.C. §§ 630(f), 631.

36. Teate engaged in statutorily protected activity when he repeatedly notified two Tanner managers, a third Tanner employee, and a national non-profit accreditation, certification, and verification agency about the age-based discrimination he suffered.

37. Teate had reasonable bases for sending his complaint, which included but was not limited to Tanner's derogatory age-based comments, Tanner's refusal to

provide Teate with the same training as other younger employees, and Tanner's disparate, age-motivated treatment motivated when issuing reprimands.

38. Tanner intentionally retaliated against Teate in the form of an adverse employment action for having exercised a statutorily protected activity by terminating him because he reported Tanner's age-based discrimination, which was protected by the ADEA. Teate's complaint of age-based discrimination was the cause of his termination, and Tanner's purported reason for terminating Teate was a pretext for its ADEA retaliation, as evidenced at least by the termination's temporal proximity, Tanner's treatment of comparators, Tanner's stated reason for termination, and because Tanner escalated its month-old punishment for an incident only after Teate made his complaints.

39. Tanner impermissibly retaliated against Teate because it terminated him for reporting Tanner's ADEA violations.

40. Teate has suffered and continues to suffer damages as a direct and proximate result of Tanner's retaliation against his exercise of rights under the ADEA.

41. Teate is entitled to recover from Tanner for at least the wages and employment benefits he lost as a result of Tanner's unlawful conduct in violation of the ADEA, and interest thereon, calculated at the prevailing rate.

42. Teate is entitled to recover liquidated damages from Tanner in addition to the compensation alleged above in accordance with 29 U.S.C. § 626(b).

43. Teate is entitled to front pay.

**COUNT THREE: VIOLATION OF 42 U.S.C. § 1981**

44. Teate incorporates herein by reference the allegations set forth in the preceding paragraphs of his complaint as if fully set forth herein.

45. At all times relevant herein, Teate was a member of a racial minority as an African American man.

46. Tanner intentionally discriminated against Teate on the basis of his race in the form of an adverse employment action. Teate reasonably believed he was subjected to racial discrimination because his supervisors refused to provide him with the training they gave to Teate's Caucasian peers and because his supervisors targeted him specifically for reprimands despite other, Caucasian employees committing either the exact same or significantly greater misconduct than Teate.

47. Tanner's discrimination against Teate was made with malice because Tanner refused to provide Teate with training for a new procedure it provided to Caucasian employees and then fired Teate for failing to follow the new procedure.

48. Tanner's discrimination against Teate was made with reckless indifference to his federally protected rights. When Teate lodged his complaints of

racial discrimination to Tanner managers and to a national hospital accreditation agency, Tanner refused to investigate and instead terminated Teate.

49. Tanner's malice is further evidenced by the fact Tanner's disparate treatment of African Americans. Teate, along with the only other African American employee in the department, was consistently subjected to a higher level of scrutiny than his Caucasian peers by his Caucasian supervisors, Campbell and Walker. Examples of Tanner's race-based malice includes, but are not limited to, Tanner's refusal to reprimand a Caucasian employee for her likely fatal mistake but Tanner's eagerness to reprimand Teate for not following procedures he either was not trained on or actually did in fact follow.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Teate respectfully prays this Court to grant the following relief:

a. That Teate has and recovers from Tanner lost back pay, front pay and benefits, with prejudgment interest thereon;

b. That Teate has and recovers liquidated damages in an amount to be determined by a jury;

c. That Teate recovers uncapped punitive damages pursuant to Tanner's intentional race-based discrimination;

      d.      That Teate recovers his attorneys' fees and costs of litigation pursuant to all applicable federal laws; and

      e.      Any and other such further relief this Court or the Finder of Fact deems equitable and just.

**Plaintiff Teate demands a trial by jury.**

This 7th day of December, 2023.

                Respectfully submitted,

                HILL, KERTSCHER & WHARTON, LLP

                By: /s/ Douglas R. Kertscher
                Douglas R. Kertscher
                Georgia State Bar No. 416265
                Ian L. P. Kecskes
                Georgia State Bar No. 490162
                *Attorneys for Plaintiff*

3625 Cumberland Blvd.
Suite 1050
Atlanta, Georgia 30339
Telephone:  770-953-0995
Facsimile:   770-953-1358
E-mail:      drk@hkw-law.com
              ikecskes@hkw-law.com